

October 24, 2024

Marcus L. Thompson
Office of the President
Jackson State University
1400 John R. Lynch Street, Administration Tower
Jackson, Mississippi 39217-0280

*Sent via U.S. Mail and Electronic Mail (president@jsums.edu)*

Dear President Thompson:

FIRE, a nonpartisan nonprofit dedicated to defending freedom of speech,[1] appreciates that Jackson State University is one of the few institutions in the country whose policies earn our "green light" rating. We are, however, concerned by JSU's disciplinary charges against tenured professor and Faculty Senate President Dawn McLin for criticizing her colleagues and JSU. The First Amendment protects the expression of state university professors even when that expression is perceived as uncivil.[2] To the extent JSU's disciplinary actions rest on McLin's protected expression, the university must refrain from punishing her.

In a September 12 disciplinary notice, JSU alleged McLin engaged in "hostile conduct, bullying, harassment, and intimidation of fellow JSU employees … interference in the re-accreditation process, abuse of her position as president of the Faculty Senate, and interference in departmental business operations."[3] JSU claims McLin harshly criticized JSU employees,

---

[1] For more than 20 years, the Foundation for Individual Rights and Expression has defended freedom of expression, conscience, and religion, and other individual rights on America's university campuses. You can learn more about our mission and activities at thefire.org.

[2] *Healy v. James*, 408 U.S. 169, 180 (1972) ("[T]he precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.'") (internal citation omitted).

[3] Disciplinary Letter from Jackson State Univ. Faculty Personnel Comm. to Dawn McLin, professor (Sept. 12, 2024) (on file with author). The recitation here reflects our understanding of the pertinent facts. We appreciate that you may have additional information to offer and invite you to share it with us. To this end, please find enclosed an executed privacy waiver authorizing you to share information about this matter.

**EXHIBIT 2**

questioned university leadership, and frequently complained about JSU policies and practices.[4] Her termination hearing is scheduled for October 25.

The First Amendment protects disrespectful and uncivil faculty speech—particularly on a university campus where the need for free and unfettered discussion is at its zenith.[5] Professors' right to voice their opinions extends to speech involving political and social issues as well as criticism of their universities and colleagues.[6] For example, JSU faulted McLin for turning her back to another professor during a university seminar, yet this silent, nondisruptive expression of disagreement remains well within her free speech rights.[7] The First Amendment guarantees these rights because authority figures "cannot make principled decisions" about what speech is "offensive" and therefore warrants punishment.[8]

While JSU has interests in addressing unprotected true threats,[9] discriminatory harassment,[10] and substantially disruptive conduct,[11] the breathing room afforded by free speech means that faculty and administrators "may have to withstand colleagues that do not like them, are rude, and may be generally disagreeable people."[12] JSU may not punish faculty over the "ordinary tribulations" of a workplace, "such as sporadic use of abusive language" that fails to rise to severe misconduct.[13] Even if JSU could show that McLin's speech "upset [administrators] and

---

[4] *Id.*

[5] *E.g.*, *Levin v. Harleston*, 966 F.2d 85, 89 (2d Cir. 1992) (a public university violated the First Amendment when it launched an investigation into a faculty member's offensive writings on race and intelligence, which administrators stated "ha[d] no place at [the college]" and constituted "conduct unbecoming of a member of the faculty."); *see also Coll. Republicans at S.F. State Univ. v. Reed*, 523 F. Supp.2d 1005, 1018–20 (N.D. Cal. 2007) (striking down civility requirement because it bans "the kind of communication that it is necessary to use to convey the full emotional power with which a speaker embraces her ideas or the intensity and richness of the feelings that attach her to her cause").

[6] Faculty retain the right to speak as private citizens on matters of public concern, such as campus issues. *E.g., Pickering v. Bd. of Educ.*, 391 U.S. 563, 576–78 (1968) (a teacher spoke as a private citizen when writing a letter to a local newspaper criticizing his employer, despite explaining that he teaches at the high school).

[7] Disciplinary Letter, *supra* note 3, at 15. JSU claimed this act was "as an overt, public sign of disrespect."

[8] *Cohen v. California*, 403 U.S. 15, 25 (1971).

[9] *Virginia v. Black*, 538 U.S. 343, 359 (2003) (a "true threat" is a statement through which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals"). McLin did not communicate a serious intent to commit violence.

[10] *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999) (defining discriminatory harassment as conduct that is unwelcome, discriminates on the basis of a protected class like race or sex, and is "so severe, pervasive, and objectively offensive" that it "deprive[s] the victim[] of access to the educational opportunities or benefits provided by the school"). McLin did not discriminate against individuals based on a protected class.

[11] *Tinker v. Des Moines*, 393 U.S. 503, 512 (1969). While in university contexts, the protections *Tinker* established set the floor for expressive rights—not the ceiling, even under *Tinker*'s disruption standard, McLin's words did not cause "material and substantial interference" with JSU operations.

[12] *Somoza v. University of Denver*, 513 F.3d 1206, 1218 (10th Cir. 2008); *see also Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) ("rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim").

[13] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks omitted).

members of the community," "cast the [university] in a negative public light,"[14] caused "serious discipline problems, undermined employee morale," and "impaired harmony among co-workers," the First Amendment's robust protection for uncivil expression precludes university punishment.[15] Allowing faculty to resolve their own disputes is far better an alternative than chilling speech by taking the drastic step of terminating a tenured professor.

To achieve JSU's mission of creating "global leaders who think critically and can address societal problems and compete effectively,"[16] we hope you agree that faculty must be able to speak their minds, even if they risk offending those in power. FIRE submits this letter as evidence in McLin's disciplinary hearing and requests a substantive response to this letter no later than close of business on November 7, 2024, confirming JSU refrained from punishing her for expression protected by the First Amendment.

Sincerely,

Zachary Greenberg
Faculty Legal Defense Counsel, Campus Rights Advocacy

Cc:     Denise J. Gregory, Provost & Vice President
        Onetta S. Whitley, General Counsel

Encl.

---

[14] *Salge v. Edna Ind. Sch. Dist.*, 411 F.3d 178, 195 (5th Cir. 2005).

[15] *Kostić v. Tex. A&M Univ. at Commerce*, 11 F. Supp. 3d 699, 720 (N.D. Tex. 2014); *see also Hulen v. Yates*, 322 F.3d 1229, 1239 (10th Cir. 2003) ("[C]onflict is not unknown in the university setting given the inherent autonomy of tenured professors and the academic freedom they enjoy."); *Grimes v. E. Ill. Univ.*, 710 F.2d 386, 388 (7th Cir. 1983) ("The purpose of tenure is to protect academic freedom—the freedom to teach and write without fear of retribution for expressing heterodox ideas—and it is faculty who engage in teaching and writing.").

[16] *Our Mission,* JACKSON STATE UNIV., https://www.jsums.edu/about-jsu [https://perma.cc/D2TB-E8JT].

## Authorization and Waiver for Release of Personal Information

I, _____Dawn McLin_____, do hereby authorize _____Jackson State University_____ (the "Institution") to release to the Foundation for Individual Rights and Expression ("FIRE") any and all information concerning my employment, status, or relationship with the Institution. This authorization and waiver extends to the release of any personnel files, investigative records, disciplinary history, or other records that would otherwise be protected by privacy rights of any source, including those arising from contract, statute, or regulation. I also authorize the Institution to engage FIRE and its staff members in a full discussion of all information pertaining to my employment and performance, and, in so doing, to disclose to FIRE all relevant information and documentation.

This authorization and waiver does not extend to or authorize the release of any information or records to any entity or person other than the Foundation for Individual Rights and Expression, and I understand that I may withdraw this authorization in writing at any time. I further understand that my execution of this waiver and release does not, on its own or in connection with any other communications or activity, serve to establish an attorney-client relationship with FIRE.

If the Institution is located in the State of California, I request access to and a copy of all documents defined as my "personnel records" under Cal. Ed. Code § 87031 or Cal. Lab. Code § 1198.5, including without limitation: (1) a complete copy of any files kept in my name in any and all Institution or District offices; (2) any emails, notes, memoranda, video, audio, or other material maintained by any school employee in which I am personally identifiable; and (3) any and all phone, medical or other records in which I am personally identifiable.

This authorization and waiver does not extend to or authorize the release of any information or records to any entity or person other than the Foundation for Individual Rights and Expression, and I understand that I may withdraw this authorization in writing at any time. I further understand that my execution of this waiver and release does not, on its own or in connection with any other communications or activity, serve to establish an attorney-client relationship with FIRE.

I also hereby consent that FIRE may disclose information obtained as a result of this authorization and waiver, but only the information that I authorize.

Signed by: *Dawn McLin*   10/24/2024

Signature   Date